**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**SHAREN SECOR,**

    **Plaintiff,**

**vs.**                                               Case No.  6:14-cv-1769-Orl-31DAB

**MARKONE FINANCIAL, LLC,**

    **Defendant.**
_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, MARKONE FINANCIAL, LLC (hereinafter "Defendant"), by and through undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully moves this Court to enter judgment in Defendant's favor and against Plaintiff on Plaintiff's claims for violation of Florida's Consumer Collection Practices Act (Count I) and for violation of the Telephone Consumer Protection Act (Count II), as more fully set forth herein, on the grounds that there is no genuine dispute as to any material fact and Defendant is entitled to judgment as a matter of law.  In support of this Motion, Defendant submits excerpts from the transcripts of the depositions referenced herein; copies of which are attached hereto[1] and incorporated by reference herein.  The grounds supporting this Motion are more fully set forth below.

---

[1] Copies of the excerpts from the September 11, 2014, Deposition of Sharon Secor ("Deposition of Sharon Secor") and the March 12, 2015, Deposition of Sharon Secor ("Second Deposition of Sharon Secor") are attached hereto as Composite Exhibit "A" and Composite Exhibit "B," respectively.

## **UNDISPUTED MATERIAL FACTS**

1.      Plaintiff sues Defendant in a two count Complaint alleging violation of Florida's Consumer Collection Practices Act (Count I) and violation of the Telephone Consumer Protection Act (Count II).

2.      Defendant is an indirect auto finance company that purchases retail installment sales contracts entered into between auto dealerships and the dealerships' customers. Defendant financed Plaintiff's purchase of an automobile. (Deposition of Sharon Secor, p.106, line 13 through p.107, line 15).

3.      In connection with Defendant's financing, Plaintiff provided her subject cell phone number on a Credit Application dated May 9, 2009. (Deposition of Sharon Secor, p.116, lines 1 – 24; Deposition of Sharon Secor, Exhibit 13; Second Deposition of Sharon Secor, p.6, lines 5 – 21).

4.      Also in connection with Defendant's financing, Plaintiff provided her subject cell phone number during a phone call with Defendant on May 14, 2009. (Second Deposition of Sharon Secor, p.6, line 22 through p.7, line 8).

5.      Plaintiff again provided her subject cell phone number to Defendant in a Deferred Payment Form she filled out and dated April 29, 2011. (Deposition of Sharon Secor, p.112, line 19 through p.114, line 5; Deposition of Sharon Secor, Exhibit 11; Second Deposition of Sharon Secor, p.7, line 24 through p.8, line 12).

6.      In accordance with the foregoing, Defendant made telephone calls to Plaintiff's subject phone number. (Plaintiff's Third Amended Complaint, Doc. 12, paragraph 16, and Plaintiff's Notice of Filing, Doc. 15).

7. Defendant's subject phone calls were made commencing September 14, 2010 and essentially ending June 9, 2011.[2] (Plaintiff's Third Amended Complaint, Doc. 12, paragraph 16, and Plaintiff's Notice of Filing, Doc. 15).

8. Plaintiff contends that essentially all of the allegedly harassing calls were made to her cell phone. (Deposition of Sharon Secor, p.61, lines 16 – 18; p.62, lines 4 – 6; p.95, lines 13 - 25).

9. Plaintiff concedes that she requested two separate deferments from Defendant, the first of which was made in September 2010 and the latter of which was made more than seven months later in late April 2011. (Deposition of Sharon Secor, p.110, line 1 through p.114, line 16; Deposition of Sharon Secor, Exhibits 10 and 11). Plaintiff filled out two separate Deferred Payment Forms in connection with these requests, the first of which is dated September 8, 2010 and the latter of which is dated April 29, 2011. (Deposition of Sharon Secor, p.110, line 1 through p.114, line 16; Deposition of Sharon Secor, Exhibits 10 and 11). As the Deferred Payment Forms themselves indicate, the deferments were offered to accommodate Plaintiff's situation. Plaintiff testified that the deferments were a way for her to just try to keep her account in good standing at least and not get repossessed, and that the deferments allowed her a little time to get in good shape. (Deposition of Sharon Secor, p.113, lines 17 - 20).

10. Plaintiff produced at her deposition her notes on the phone calls that were made to her, who she spoke to, what time of day, detailed notes of what was said, and the result of the calls. (Deposition of Sharon Secor, p.32, line 17 through p.33, line 20;

---

[2] Defendant's records indicate one further phone call on August 30, 2011. (Plaintiff's Third Amended Complaint, Doc. 12, paragraph 16, and Plaintiff's Notice of Filing, Doc. 15).

p.35, lines 15 – 23; Deposition of Sharon Secor, Exhibits 2, 3, 4 and 8).  Plaintiff's notes specifically denote calls in late May 2011 and into early June 2011.  (Deposition of Sharon Secor, Exhibits 2, 3, 4 and 8).  Plaintiff testified that she wrote these notes when she first started having issues and as things started to get worse between Plaintiff and Defendant, meaning the phone calls started coming frequently.  (Deposition of Sharon Secor, p.36, lines 4 – 7; p.37, lines 18 – 21).  Plaintiff made these notes when the calls were coming frequently.  (Deposition of Sharon Secor, p.42, lines 11 – 16; p.69, lines 18 - 19).  Plaintiff further testified that these notes denote the calls that were "significant" because they were becoming quite harassing.  (Deposition of Sharon Secor, p.39, lines 5 – 12; p.66, lines 6 – 8; p.76, lines 13 -16).

11.   Plaintiff testified that she was trying to make little payments at the time when all the notes were made.[3]  (Deposition of Sharon Secor, p.56, lines 23 - 24).  Plaintiff herself summarized the history and frequency of Defendant's phone calls as follows:

> May [2011] is when…the phone calls were coming frequently.  I was doing pretty well on my payments until my husband had his stroke.  And then after he had his stroke, my income significantly decreased and, you know, that's when I started struggling.  When he left us in December [2010] is when we really started struggling and that's when I reached out to them to try to make payment arrangement, pay a little bit here, a little bit there, and then it was towards the end of May is when the phone --- I really got into dire straits and the phone calls started coming more frequently.  I may have had occasional calls from them asking for --- you know, *when I made calls asking for deferments and stuff, all through the history*.

(Deposition of Sharon Secor, p.74, line 16 through p.75, line 5) (emphasis added).  Plaintiff further testified that she herself called Defendant on several occasions saying

---

[3] Plaintiff's notes reflect Defendant's last phone call between Plaintiff and Defendant prior to the vehicle being repossessed; which call was on June 9, 2010, the same day Plaintiff's vehicle was repossessed.  (Deposition of Sharon Secor, p.58, line 24 through p.60, line 5).

4

she was looking for a deferment or to work out payment arrangements. (Deposition of Sharon Secor, p.85, lines 2 – 8).[4]

12. Plaintiff testified that in early June 2011 Defendant's repossession department called her and that she was trying to work with Defendant. (Deposition of Sharon Secor, p.57, line 9 through p.58, line 23). Plaintiff was hoping Defendant would work with her as to what she could pay Defendant. (Deposition of Sharon Secor, p.58, lines 7 – 11).

13. Plaintiff also testified that although she told Defendant that she would try to gather funds for payment(s) and that she would call Defendant back, she did not call Defendant back as promised. (Deposition of Sharon Secor, p.89, line 1 through p.91, line 3). Plaintiff further admitted that she made comments to Defendant to appease Defendant, so that she could try to work on getting money together. (Deposition of Sharon Secor, p.99, lines 9 -11). She did this to keep her car from being repossessed, as it was her only form of transportation. (Deposition of Sharon Secor, p.99, lines 12 – 14). She wanted to keep her car. (Deposition of Sharon Secor, p.99, lines 16 – 17).

14. In short, the undisputed material facts in this case show that the parties were negotiating differences throughout the history.

15. Finally, Plaintiff testified that she knew Defendant's repossession department was calling her and that her car was set up to be repossessed and had gone into repo. (Deposition of Sharon Secor, p.57, lines 21-23; p.58, lines 5 – 7; p.92, line 24

---

[4] Plaintiff further admitted that she called or reached out to Defendant on September 7, 2010, in December 2010, on April 28, 2011 and in early June 2011. (Deposition of Sharon Secor, p.74, line 16 through p.75, line 5; Second Deposition of Sharon Secor, p.9, line 5 through p.12, line 3; p.17, line 24 through p.18, line 22).

through p.93, line 9). Plaintiff further testified that Defendant never told her that the repossession was being stopped, and never told her that her vehicle was not going to be repossessed. (Deposition of Sharon Secor, p.94, lines 20 – 23; p.95, lines 7 – 12).

## MEMORANDUM OF LAW

### Standard

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the nonmoving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [her] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is an issue for trial." *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. Thereafter, summary judgment is mandated against the nonmoving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.*

## Argument

I. **CLAIM FOR VIOLATION OF SECTION 559.72(7), *FLORIDA STATUTES***

A. **Willfully communicating with such frequency as can reasonably be expected to harass.**

Plaintiff alleges that Defendant violated Section 559.72(7) by willfully communicating with such frequency as can reasonably be expected to harass. The substantive law applicable to such claims has been summarized by Florida courts as follows:

> Proof of numerous calls does not make a jury issue on liability if all must agree the creditor called only to inform or remind the debtor of the debt, to determine his reasons for nonpayment, to negotiate differences or to persuade the debtor to pay without litigation. The trier of fact may consider such communications harassing in their frequency, however, when they continue after all such information has been communicated and reasonable efforts at persuasion and negotiation have failed. Beyond that point communication "can reasonably be expected to harass the debtor or his family," because it tends only to exhaust the resisting debtor's will. If the creditor intends that likely effect, further communication is willful and actionable.

*Schauer v. Morse Operations, Inc.*, 5 So.3d 2 (Fla. 4th DCA 2009), citing *Story v. Fields*, 343 So.2d 675 (Fla. 1st DCA 1977). In this case, the undisputed material facts show that Defendant called only to inform or remind Plaintiff of the debt, to determine her reasons for nonpayment, to negotiate differences or to persuade her to pay without litigation. The undisputed material facts further show that Defendant's communications did not continue after all such information had been communicated and reasonable efforts at persuasion and negotiation have failed.

Plaintiff concedes that she requested two separate deferments from Defendant, the first of which was made in September 2010 and the latter of which was made more

than seven months later in late April 2011.  (Deposition of Sharon Secor, p.110, line 1 through p.114, line 16; Deposition of Sharon Secor, Exhibits 10 and 11).  Plaintiff filled out two separate Deferred Payment Forms in connection with these requests, the first of which is dated September 8, 2010 and the latter of which is dated April 29, 2011.  (Deposition of Sharon Secor, p.110, line 1 through p.114, line 16; Deposition of Sharon Secor, Exhibits 10 and 11).  As the Deferred Payment Forms themselves indicate, the deferments were offered to accommodate Plaintiff's situation.  Plaintiff testified that the deferments were a way for her to just try to keep her account in good standing at least and not get repossessed, and that the deferments allowed her a little time to get in good shape.  (Deposition of Sharon Secor, p.113, lines 17 - 20).

Plaintiff produced at her deposition her notes on the phone calls that were made to her, who she spoke to, what time of day, detailed notes of what was said, and the result of the calls.  (Deposition of Sharon Secor, p.32, line 17 through p.33, line 20; p.35, lines 15 – 23; Deposition of Sharon Secor, Exhibits 2, 3, 4 and 8).  Plaintiff's notes specifically denote calls in late May 2011 and into early June 2011.  (Deposition of Sharon Secor, Exhibits 2, 3, 4 and 8).  Plaintiff testified that she wrote these notes when she first started having issues and as things started to get worse between Plaintiff and Defendant, meaning the phone calls started coming frequently.  (Deposition of Sharon Secor, p.36, lines 4 – 7; p.37, lines 18 – 21).  Plaintiff made these notes when the calls were coming frequently. (Deposition of Sharon Secor, p.42, lines 11 – 16; p.69, lines 18 - 19).  Plaintiff further testified that these notes denote the calls that were "significant" because they were becoming quite harassing.  (Deposition of Sharon Secor, p.39, lines 5 – 12; p.66, lines 6 – 8; p.76, lines 13 -16).

Plaintiff testified that she was *trying to make little payments at the time when all the notes were made*. (Deposition of Sharon Secor, p.56, lines 23 -24) (emphasis added). Plaintiff herself summarized the history and frequency of Defendant's phone calls as follows:

> May [2011] is when…the phone calls were coming frequently.  I was doing pretty well on my payments until my husband had his stroke.  And then after he had his stroke, my income significantly decreased and, you know, that's when I started struggling.  When he left us in December [2010] is when we really started struggling and that's *when I reached out to them to try to make payment arrangement, pay a little bit here, a little bit there*, and then it was towards the end of May is when the phone --- I really got into dire straits and the phone calls started coming more frequently.  I may have had occasional calls from them asking for --- you know, *when I made calls asking for deferments and stuff, all through the history*.

(Deposition of Sharon Secor, p.74, line 16 through p.75, line 5) (emphasis added). Plaintiff further testified that she herself called Defendant on several occasions saying *she was looking for a deferment or to work out payment arrangements*. (Deposition of Sharon Secor, p.85, lines 2 – 8) (emphasis added).

Plaintiff testified that in early June 2011 Defendant's repossession department called her and that *she was trying to work with Defendant*. (Deposition of Sharon Secor, p.57, line 9 through p.58, line 23) (emphasis added).  Plaintiff was hoping Defendant would work with her as to what she could pay Defendant. (Deposition of Sharon Secor, p.58, lines 7 – 11).

Plaintiff also testified that although she told Defendant that she would try to gather funds for payment(s) and that she would call Defendant back, she did not call Defendant back as promised. (Deposition of Sharon Secor, p.89, line 1 through p.91, line 3). Plaintiff further admitted that she made comments to Defendant to appease Defendant, so that she could try to work on getting money together. (Deposition of Sharon Secor, p.99, lines

9 -11). She did this to keep her car from being repossessed, as it was her only form of transportation. (Deposition of Sharon Secor, p.99, lines 12 – 14). She wanted to keep her car. (Deposition of Sharon Secor, p.99, lines 16 – 17).

In short, the undisputed material facts in this case show that the parties were --- by Plaintiff's very own admission --- negotiating differences throughout the history. Indeed Plaintiff herself testified that she "made calls asking for deferments and [to work out payment arrangements], all through the history." (Deposition of Sharon Secor, p.74, line 16 through p.75, line 5; p.85, lines 2 - 8). Plaintiff further testified that at the very same time as the allegedly "harassing" phone calls, she was trying to make little payments to Defendant and trying to work with Defendant. The undisputed evidence therefore further shows that Defendant's communications did not continue after reasonable efforts at persuasion and negotiation have failed. For these reasons, there is no genuine issue as to any material fact and Defendant is entitled to judgment as a matter of law on Plaintiff's claim for willfully communicating with such frequency as can reasonably be expected to harass. *Schauer v. Morse Operations, Inc.*, 5 So.3d 2 (Fla. 4th DCA 2009), citing *Story v. Fields*, 343 So.2d 675 (Fla. 1st DCA 1977).[5]

---

[5] It is notable that the calls which were made in September 2010 are barred from consideration by the two year statute of limitations set forth in Section 559.77(4) because Plaintiff's action was not commenced until October 2012. It is further notable that courts routinely hold that the entry of summary judgment in favor of a creditor is proper where the frequency of phone calls is the same or higher than the alleged frequency of phone calls at issue in this case. *Tucker v. CBE Group, Inc.* 710 F.Supp.2d 1301 (M.D. Fla. 2010) (57 calls over a twenty day period including seven calls on any given day does not constitute a violation of the FDCPA as a matter of law); *Saltzman v. I.C. System, Inc.,* 2009 WL 3190359 (E.D. Mich. 2009) (defendant entitled to summary judgment in its favor on FDCPA claim where defendant makes 60 calls over five week period); *Pugliese v. Professional Recovery Service, Inc.*, 2010 WL 2632562 (E.D. Mich. 2010) (defendant entitled to summary judgment where defendant made 350 calls over an eight month period and allegedly contacted plaintiffs several times every day); *Druschel v. CCB Credit*

> **i.  Plaintiff's allegation that she asked Defendant to stop calling her does not present a genuine issue of material fact; and was not reduced to requisite writing.**

Plaintiff further alleges that she asked Defendant to stop calling her. (Plaintiff's Third Amended Complaint, Doc. 12, paragraph 13). For the reasons set forth below, Plaintiff's allegation fails because it does not present a *genuine* issue of *material* fact; and was not reduced to requisite writing.

**Plaintiff's allegation does not present a genuine issue of material fact**. An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Harrison v. Culliver*, 746 F.3d 1288 (11th Cir. 2014). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.*

Plaintiff's allegation that she asked Defendant to stop calling her is not "material" because, under the applicable substantive law, it does not affect the outcome of the case. *Harrison.* The applicable substantive law provides that proof of numerous calls does not make a jury issue on liability if all must agree that the parties were negotiating differences. *Schauer.* In this case, as set forth in detail above, the undisputed material facts in this case show --- by the Plaintiff's own admission --- that the parties were negotiating differences throughout the history. Therefore, under applicable substantive law,

---

*Services, Inc.,* 2011 WL 2681637 (M.D. Fla. 2011) (14 calls over a two week period does not give rise --- as a matter of law --- to a violation of the FDCPA); *Webb v. Premiere Credit of North America*, 2012 WL 5199754 (D. Kan. 2012) (a defendant is entitled to summary judgment where it calls up to six --- or more --- times per day on consecutive days over a period of months); *Waite v. Financial Recovery Services, Inc.*, 2010 WL 5209350 (M.D. Fla. 2010) (defendant entitled to summary judgment where defendant allegedly made several calls within a single day).

11

Defendant is entitled to summary judgment on Plaintiff's claim for willfully communicating with such frequency as can reasonably be expected to harass. *Schauer.* That Plaintiff also allegedly asked Defendant to stop calling her does not change the fact that the parties were negotiating differences throughout the history; and therefore does not affect the outcome, *to wit*, that Defendant is entitled to summary judgment on Plaintiff's claim for willfully communicating with such frequency as can reasonably be expected to harass.

For the same reasons, Plaintiff's allegation that she asked Defendant to stop calling her also does not present a "genuine" issue of fact because the record taken as a whole could not lead a rational trier of fact to find for Plaintiff. *Harrison.* Indeed the record taken as a whole could only lead a rational trier of fact to find for Defendant. Again, the record taken as a whole shows that the parties were negotiating differences throughout the history; and therefore Defendant is entitled to summary judgment on Plaintiff's claim for willfully communicating with such frequency as can reasonably be expected to harass. *Schauer.*

**Plaintiff's allegation was not reduced to requisite writing.** Although Plaintiff herself took detailed written notes of the phone calls that she categorizes as significant because they were becoming quite harassing, Plaintiff did not denote any requests that Defendant stop calling her. (Deposition of Sharon Secor, p.39, lines 5 – 12; p.76, lines 13 -16; p.66, lines 6 – 8; p.137, line 19 though p.138, line 15).[6] Plaintiff further concedes that she never asked Defendant to stop calling her in writing. (Deposition of Sharon Secor, p.137, line 19 through p.138, line 15). Such a writing, however, is required by the

---

[6] Defendant's account notes --- denoting the substance of phone calls its representatives had with Plaintiff --- also nowhere denote that Plaintiff ever asked Defendant to stop calling her.

12

Fair Debt Collection Practices Act ("FDCPA").[7]  Under the FDCPA, a debt collector shall not communicate further with the consumer --- except under limited circumstances --- after a consumer notifies a debt collector in writing that the consumer wishes the debt collector to cease further communication.  *Saltzman v. I.C. System, Inc.,* 2009 WL 3190359 (E.D. Mich. 2009) addresses this very issue:

> The Court finds no evidence in the record from which a reasonable trier of fact could infer that Defendant acted with the requisite "intent to annoy, abuse, or harass" in making the telephone calls at issue…Although Plaintiff alleges that she requested Defendant to stop calling her, she did not send Defendant a cease and desist letter, dispute the amount owed, or provide evidence that Defendant has acted in a manner that would be actionable as harassment, oppression or abuse.
>
> Plaintiff has failed to point to any specific circumstances surrounding these telephone calls that would show any intent, on the part of Defendant, to harass, annoy or abuse.
>
> …due to Plaintiff's failure to produce evidence demonstrating a genuine issue of material fact, Defendant is entitled to summary judgment in its favor on this claim.

*Saltzman* at 7, 8.  *Pugliese v. Professional Recovery Service, Inc.*, 2010 WL 2632562 (E.D. Mich. 2010) also addresses this issue.  In *Pugliese*, although the plaintiffs alleged that the defendants continued to call plaintiffs constantly after plaintiffs repeatedly asked defendants to cease, the court specifically noted that the plaintiffs never wrote to defendants asking them to cease calling; and held:

> [d]espite Plaintiffs' extensive evidence documenting the number of calls made, there is no evidence to demonstrate that Defendants acted intentionally to annoy, harass, or abuse them.

---

[7] In applying and construing the civil remedies section of Florida's Consumer Collection Practices Act, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal FDCPA. Section 559.77(5), *Florida Statutes.*

*Pugliese* at 3, 9. The *Pugliese* court accordingly granted summary judgment to defendants on plaintiffs' claim under Section 1692d of the FDCPA. *Pugliese* at 10. In short, although the FDCPA requires that a cease and desist request be made in writing, here it is undisputed that Plaintiff never made any such request.

    **B.**    <u>**Willfully engaging in other conduct which can reasonably be expected to abuse or harass.**</u>

Plaintiff alternatively alleges that Defendant violated Section 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass. Plaintiff specifically alleges that Defendant harassed and abused the Plaintiff by: 1) Plaintiff telling Defendant that she could pay Defendant $100.00; 2) Defendant telling the Plaintiff it would note the account; 3) leading Plaintiff to believe that such a payment would be acceptable; and 4) repossessing Plaintiff's vehicle. (Plaintiff's Third Amended Complaint, Doc.12, paragraph 27). Plaintiff testified that she knew Defendant's repossession department was calling her and that her car was set up to be repossessed and had gone into repo. (Deposition of Sharon Secor, p.57, lines 21-23; p.58, lines 5 – 7; p.92, line 24 through p.93, line 9). Plaintiff further testified that Defendant never told her that the repossession was being stopped, and never told her that her vehicle was not going to be repossessed. (Deposition of Sharon Secor, p.94, lines 20 – 23; p.95, lines 7 – 12). Nevertheless, Plaintiff apparently quizzically claims that Defendant's alleged conduct in simply telling Plaintiff that it would note the account in response to Plaintiff's statement that she could make a $100.00 payment, followed by the repossession of Plaintiff's

vehicle, amounts to conduct which can reasonably be expected to abuse or harass.[8] Such unremarkable conduct, however, does not constitute conduct which can reasonably be expected to *abuse* or *harass*.

Courts must give statutory language its plain and ordinary meaning; which may be discerned from a dictionary. *Glass v. Captain Katanna's, Inc.*, 950 F.Supp.2d 1235 (M.D. Fla. 2013). The Merriam-Webster Dictionary defines "abuse" as treating a person in a harsh or harmful way; and defines "harass" as annoying or bothering in a constant or repeated way. See attached Composite Exhibit "D." The subject unremarkable conduct alleged by Plaintiff does not, however, amount to treatment of Plaintiff in a harsh or harmful way, and further does not amount to annoying or bothering Plaintiff in a constant or repeated way. Therefore the subject alleged conduct simply does not constitute conduct which can reasonably be expected to abuse or harass, as those terms are plainly defined. Defendant is accordingly entitled to judgment on Plaintiff's claim that Defendant engaged in other conduct which can reasonably be expected to abuse or harass.

## II.     **TELEPHONE CONSUMER PROTECTION ACT**

47 U.S.C. Section 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act of 1991 ("TCPA") provides:

It shall be unlawful for any person with the United States…

---

[8] Defendant's representative Tyrus Beam testified --- in accordance with Defendant's account notes --- that when Plaintiff advised during a telephone conversation on June 9, 2011 that she would send a payment to Defendant, he then advised Plaintiff during this same conversation that there were no holds, meaning that the collections process would continue. (Deposition of Tyrus Beam, p.39, lines 12 – 25). A copy of the excerpt from the August 14, 2014, Deposition of Tyrus Beam is attached and incorporated hereto as Exhibit "C."

15

>
> (A)     to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system…
>
> (iii)  to any telephone number assigned to a … cellular telephone service…

The TCPA allows autodialed and prerecorded message calls if the called party expressly consents to their use.  *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 7 F.C.C.R. 8752, 8768 ¶ 29, 1992 WL 690928 (Oct. 16, 1992) ("1992 FCC Order").  The TCPA does not define "express consent."  *Murphy v. DCI Biologicals Orlando, LLC, DCI*, 2013 WL 6865772, *5 (M.D. Fla. Dec. 31, 2013).  Congress delegated to the Federal Communications Commission ("FCC") the authority to make rules and regulations to implement the TCPA.  *Id.,* citing 47 U.S.C. §227(b)(2).  Pursuant to that authority, the FCC stated:

> any telephone subscriber who releases his or her telephone number has, in effect, given prior express consent to be called by the entity to which the number was released...
>
> persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary.

1992 FCC Order ¶¶ 30-31.  This Court is bound to apply the FCC's definition of "express consent" under the 1992 FCC Order.  *Id.* at *8.  Such "express consent" is consent to received auto-dialed calls.  *Id.*  The 1992 FCC Order is clear that providing a number constitutes express consent to be auto-dialed under the TCPA.  *Id.*[9]

---

[9] For instance, in *Pinkard v. Wal-Mart Stores, Inc.*, 2012 WL 5511039, *2 (N.D. Ala. Nov. 9, 2012), the court held that the plaintiff's provision of her number to a Walmart pharmacy in connection with dropping off a prescription constituted "express consent" to be called under the TCPA, noting that the 1992 FCC Order interpreted that term "to encompass a situation where an individual voluntarily divulges her telephone number."  The court considered this to be consistent with the overwhelming weight of social practice that distributing one's telephone number is an invitation to be called, especially when the

16

In connection with Defendant's financing, Plaintiff provided her subject cell phone number on a Credit Application dated May 9, 2009. (Deposition of Sharon Secor, p.116, lines 1 – 24; Second Deposition of Sharon Secor, p.6, lines 5 – 21; Deposition of Sharon Secor, Exhibit 13). Also in connection with Defendant's financing, Plaintiff provided her subject cell phone number during a phone call with Defendant on May 14, 2009. (Second Deposition of Sharon Secor, p.6, line 22 through p.7, line 8). Plaintiff again provided her subject cell phone number to Defendant in a Deferred Payment Form she filled out and dated April 29, 2011. (Deposition of Sharon Secor, p.112, line 19 through p.114, line 5; Second Deposition of Sharon Secor, p.7, line 24 through p.8, line 12; Deposition of Sharon Secor, Exhibit 11). In short, Plaintiff released and provided her telephone number to Defendant; which release and provision constitutes prior express consent under the TCPA. *Murphy v. DCI Biologicals Orlando, LLC, DCI*, 2013 WL 6865772, *5 (M.D. Fla. Dec. 31, 2013). After obtaining this prior express consent from Plaintiff, Defendant made the subject telephone calls to Plaintiff's subject cell phone number. (Plaintiff's Third Amended Complaint, Doc. 12, paragraph 16, and Plaintiff's Notice of Filing, Doc. 15).

Although Plaintiff testified during her first deposition (taken in the state court case before removal) that she asked Defendant to stop calling her during the next phone call after her husband's July 2010 stroke; Plaintiff ultimately testified that she did not recall

---

number is given at another's request. *Id.* at *5. Similarly, in *Roberts v. PayPal, Inc.*, the court adopted the reasoning in *Pinkard* and found that the plaintiff "consented to receive text messages from PayPal simply by providing his cell phone number…," consistent with the 1992 FCC Order. 2013 WL 2384242, *4-*5 (N.D. Cal. May 30, 2013). The *Emanuel v. Los Angeles Lakers, Inc.* court also followed the reasoning in *Pinkard*, and held "distributing one's telephone number is an invitation to be called" when determining that the plaintiff's text message sent during a Lakers basketball game for display on the scoreboard constituted express consent to receiving a text message from the defendant. 2013 WL 1719035, *3-*4 (C.D. Cal. Apr. 18, 2013).

17

asking Defendant to stop calling her during such phone call.  (Deposition of Sharon Secor, p.129, lines 5 - 25).  Plaintiff testified at her second deposition that she called Defendant for the first time on September 7, 2010 to advise that her husband had a stroke, that he was not working, that she was living off her disability, and to request a deferment.  (Plaintiff's Third Amended Complaint, paragraph 10; Second Deposition of Sharon Secor, p.9, line 5 through p.12, line 3).  Plaintiff further testified at her second deposition that she could not recall receiving any collection calls from Defendant before then.  (Second Deposition of Sharon Secor, p.12, lines 12 - 19).  Indeed the only records of phone calls in this case show that no calls were made by Defendant to Plaintiff before then.  (Plaintiff's Third Amended Complaint, Doc. 12, paragraph 16, and Plaintiff's Notice of Filing, Doc. 15).  Plaintiff testified that the purpose of her September 7, 2010 call to Defendant was to request a deferment.  (Second Deposition of Sharon Secor, p.13, line 16 through p.14, line 4).  When Plaintiff was then asked to accordingly concede that she did not ask Defendant to stop calling her during this first phone call with Defendant (which she herself made for the purpose of requesting a deferment), Plaintiff responded "not that I can recall."  (Second Deposition of Sharon Secor, p.13, line 16 through p.14, line 15).  Indeed it would be definitively implausible for the Plaintiff to ask the Defendant to stop calling her during Plaintiff's very first phone call with Defendant, which Plaintiff herself made for the purpose of requesting a deferment.

With regards to other particular dates on which Plaintiff allegedly requested that Defendant stop calling, Plaintiff failed to identify any particular dates earlier than March (2011).  (Second Deposition of Sharon Secor, p.20, line 16 through p.21, line 6;

18

Deposition of Sharon Secor, p.63, line 2 through p.66, line 8).[10]  Therefore Plaintiff expressly consented to all of the subject phone calls occurring before such time, or before March 2011.  Defendant is accordingly entitled to summary judgment in connection with all such calls.[11]

WHEREFORE, Defendant MARKONE FINANCIAL, LLC respectfully requests that that Court grant this Motion for Summary Judgment; enter summary judgment in Defendant MARKONE FINANCIAL, LLC's favor and against Plaintiff SHARON SECOR on Plaintiff's claims, as set forth herein; and grant such other and further relief as this Court deems proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy hereof has been furnished via email to Michael J. Vitoria, Esq. on this 4th day of May, 2015.

>KILLGORE, PEARLMAN, STAMP,
> ORNSTEIN & SQUIRES, P.A.
>2 South Orange Avenue, 5th Floor
>Orlando, Florida 32801
>Telephone:  (407) 425-1020
>Facsimile:  (407) 839-3635
>
>  _/s/ William J. Denius_
>William J. Denius
>Florida Bar No. 0093637
>Counsel for Defendant
>Primary:  wjdenius@kpsos.com
>Secondary:  ldreyer@kpsos.com
>Secondary:  litigation@kpsos.com

---

[10] It is further notable that Plaintiff testified that her dates and everything are not clear because it's been several years and she's been on much medication and illness; and that her memory is really shot.  (Deposition of Sharon Secor, p.117, lines 20 -23).

[11] A total of 41 phone calls were made via LiveVox to Plaintiff's subject telephone number before March 2011.  (Plaintiff's Third Amended Complaint, Doc. 12, paragraph 16, and Plaintiff's Notice of Filing, Doc. 15).